STATE OF HAWAII, Plaintiff-Appellant, *v.* JOHNETTE KAPULANI KALUNA, also known as Lynn Brewer, Defendant-Appellee.

NO. 5431

MARCH 18, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI,
and OGATA, JJ., and CIRCUIT JUDGE LUM
ASSIGNED TEMPORARILY BY REASON OF VACANCY

362

OPINION OF THE COURT BY LEVINSON, J.

This appeal poses important questions concerning the allowable scope, under the federal and state constitutions, of a warrantless search of an arrestee's body conducted incident to a lawful arrest and preliminary to the arrestee's incarceration. On the afternoon of September 26, 1972, two men, one of whom was armed with a pistol, and a woman reportedly committed an attempted robbery of the McDonald's restaurant in Palolo. In the evening of the same day, the defendant was arrested on the belief that she was one of the participants in the alleged crime. The arresting officers, both of whom were males, did not search the defendant at the scene of her arrest. Instead, they transported her directly to the police station, where she was placed in the custody of police matron Yok Lan Mehau at the receiving desk. Matron Mehau led the defendant into a bathroom and told her to remove her outer garments in preparation for a search. After stripping to her underwear, the defendant reached into the right side of her brassiere and pulled out a piece of tissue paper which was folded in a square. This packet she handed to matron Mehau, stating "This is all I have."

Although matron Mehau "had no idea" what was inside the folded tissue, she nonetheless opened it "[j]ust to see

what she had." Inside the packet, matron Mehau discovered four red capsules which later laboratory analysis showed to be Seconal, a barbiturate.

The defendant was subsequently charged with the unlawful possession of these capsules, she was never charged with attempted robbery. After a pre-trial hearing on the defendant's motion to suppress the capsules as evidence, Circuit Court Judge Lanham on January 30, 1973, ordered suppression on the ground that the defendant's search at the station house was unconstitutionally broad. From this order the State appeals. We affirm Judge Lanham's decision. Since we are of the opinion that the search was unreasonable even if the arrest for attempted robbery was valid, we need not decide whether the police had probable cause to arrest the defendant. *See Preston v. United States,* 376 U.S. 364, 365 (1964).

### PROFFERED JUSTIFICATIONS FOR THE SEARCH

The State suggests two basic theories to support the legality of the search in this case by characterizing it as (1) a search incident to a lawful arrest, or (2) a preincarceration search. We note at the outset that since it was conducted without a warrant, the search carries an initial presumption of unreasonableness. *Katz v. United States,* 389 U.S. 347, 357 (1967). To overcome this presumption, the State must show that the facts of the case justified the police in searching without a warrant and that the search itself was no broader than necessary to satisfy the need which legitimized departure from the warrant requirement in the first place. *See e.g., Cupp v. Murphy,* 412 U.S. 291, 295 (1973) ("the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement"). This principle has been so often reiterated that until recently it was thought to be an immutable corollary of the fourth amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It clearly is and has been a principle impliedly rooted in article I, section 5 of the Hawaii Constitution, which provides:

364

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

*See State v. Dias*, 52 Haw. 100, 107, 470 P.2d 510, 514-15 (1970). Cognizant of this tenet that the scope of a warrantless search must be strictly tailored to the reasons for allowing it, we consider the exceptions to the warrant requirement cited by the State and their applicability to the facts of this case.

## A. *Search Incident to a Lawful Arrest*

As we generalized in *State v. Park,* 50 Haw. 275, 276, 439 P.2d 212, 213 (1968), "[a] contemporaneous search incidental to a lawful arrest may be made for the fruits of the crime, implements used to commit the crime and for weapons." The defendant argues as a threshold matter that the search at the police station, some two and a quarter hours after her arrest, was too remote from the time of that arrest to be incident to it. She cites *Preston v. United States,* 376 U.S. 364, 367 (1964), wherein the Court stated: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." On the facts of *Preston* and as a general statement, however, this principle applies primarily to searches of the *area* at which the defendant was arrested; it is obvious that once an arrestee has been removed from that area, he is no longer capable of using weapons or destroying evidence located there. This being so, legitimate necessity no longer impedes the police from securing a warrant to search the site. *See Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *State v. Dias, supra.*

However, the person of an arrestee is subject to his control at all times during and after the arrest. Since he could use weapons or destroy evidence hidden on his person at any time during his custody, a search conducted at the station house a reasonable time after a valid arrest is no less "incident" to

that arrest than one conducted at the scene thereof. *See United States v. DeLeo*, 422 F.2d 487, 491-93 (1st Cir.), *cert. denied*, 397 U.S. 1037 (1970). Indeed, as pointed out in *United States ex rel. Muhammad v. Mancusi*, 432 F.2d 1046, 1047 (2d Cir. 1970), *cert. denied*, 402 U.S. 911 (1971):

> Nothing could be more consistent with a decent regard for the preservation of appellant's right to human dignity than the act of the officers here in not publicly overhauling appellant's personal effects [at the scene of his arrest]. Officers may indeed promptly conduct more thorough searches of an arrested person and of the personal effects in his possession at the time of his arrest at a more convenient place than the spot of the arrest.

Moreover, in this case the defendant is a female and the arresting officers are males — a fact which underscores the reasonableness of delaying a complete search of her person until she could be transported to the police station where a matron was available to perform the task. *See United States v. Robinson*, 354 F.2d 109, 113 (2d Cir. 1965), *cert. denied*, 384 U.S. 1024 (1966). Certainly the police should not be castigated for their attempt to mitigate in this manner the personal indignities attending the body search of the defendant incident to her arrest.

The defendant is correct, however, in urging us as a general matter to apply the search incident to arrest exception only with dogged and meticulous reference to its theoretical underpinnings. It is precisely *because* an arrestee may use weapons or destroy evidence before a warrant can be obtained that a warrantless search is justified. On the other hand, it is *because* an arrestee is only capable of using weapons or destroying evidence on his person or within his immediate control that a warrantless search incident to his arrest may not exceed those areas in scope. *Chimel v. California*, 395 U.S. 752 (1969); *State v. Dias, supra*.

Most of the constitutional exegesis on searches incident to arrests has centered around the problem of defining the area within an arrestee's control. In *Chimel v. California, supra*, for example, the Court held that a warrantless arrest in one room of a house did not justify a general search of the entire

house; since the arrestee's area of immediate control could not conceivably have extended that far, neither did the arresting officers' authority to search without a warrant. Similarly, this court in *State v. Dias, supra,* found that the warrantless search of an area several feet beyond the reach of the defendant at the time of his arrest exceeded the permissible bounds of the search incident to arrest exception.

Of course, the federal and state constitutions are concerned with the privacy and integrity of an individual's body no less than that of the area where he happens to be at the time of his arrest. *See Davis v. Mississippi,* 394 U.S. 721 (1969). In view of the strong preference for warrants in search and seizure cases, *see State v. Davenport,* 55 Haw. 90, 98, 516 P.2d 65, 71 (1973), most courts[1] and commentators[2] had assumed that under the fourth amendment the scope of body searches incident to arrests was circumscribed by concerns similar to those articulated in *Chimel.* For example, it was thought that an arrest for a minor traffic offense did not authorize a search of the arrestee's body for drugs absent a reasonable belief by the police that the arrestee had committed the crime of unlawful possession of drugs *in addition* to the traffic offense. *See, e.g., State v. O'Neal,* 251 Ore. 163, 444 P.2d 951 (1968); *cf. People v. Superior Court,* 3 Cal. 3d 807, 478 P.2d 449, 91 Cal. Rptr. 729 (1970) (automobile search for drugs after arrest of driver on traffic charge unlawful absent reasonable grounds to believe that drugs were secreted therein). The premise, as stated in *State v. Krogness,* 238 Ore. 135, 144, 388 P.2d 120, 124 (1963), *cert. denied,* 377 U.S. 992 (1964), that "[a]s a general rule, the search must be reasonably related to the offense which prompts the arrest,'' was considered axiomatic to the important fourth amendment values of individual dignity and integrity of the person. If the circumstances and nature of the offense did not give rise to a

---

[1] *See, e.g.,* United States v. Robinson, 471 F.2d 1082 (D.C. Cir. 1972) (en banc), *rev'd,* 94 S. Ct. 467 (1973); State v. Curtis, 290 Minn. 429, 190 N.W.2d 631 (1971); State v. Elkins, 245 Ore. 279, 422 P.2d 250 (1966).

[2] *See, e.g.,* Note, *Searches of the Person Incident to Lawful Arrest,* 69 COLUM. L. REV. 866 (1969); *The Supreme Court, 1966 Term,* 81 HARV. L. REV. 69, 121-22 (1967); Note, *Scope Limitations for Searches Incident to Arrest,* 78 YALE L.J. 433 (1969).

legitimate need for a thorough search without warrant, such a search was deemed to be constitutionally interdicted. *Compare Terry v. Ohio*, 392 U.S. 1 (1968) (frisk for weapons justified if police have reasonable suspicion that suspect is armed and dangerous) *with Sibron v. New York*, 392 U.S. 40 (1968) (search of suspect's pockets not justified if police have neither probable cause to arrest nor reasonable suspicion that suspect is armed and dangerous). While *Terry* and *Sibron* were concerned on their facts with the problem of "stop and frisk" on less than probable cause, the rationale underlying those decisions was thought, until recently, to govern the whole range of problems in warrantless search and seizure cases. *Terry v. Ohio, supra* at 19 ("The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible"); *see United States v. Robinson*, 471 F.2d 1082 (D.C. Cir. 1972) (en banc), *rev'd*, 94 S. Ct. 467 (1973).

Unexpectedly, the recent United States Supreme Court decisions in *United States v. Robinson*, 94 S. Ct. 467 (1973) and *Gustafson v. Florida*, 94 S. Ct. 488 (1973), have forced a serious re-evaluation of the foregoing fundamentals. In *Robinson*, Justice Rehnquist, writing for a five-member majority,[3] upheld the legality of a complete body search of an individual conducted as an incident to his lawful custodial arrest for driving without a valid license. In the course of that search, the arresting officer uncovered a crumpled cigarette package which he proceeded to open and in which he discovered heroin which was subsequently used as evidence against the arrestee. The companion case of *Gustafson v. Florida* presented a similar factual situation except that the police found marijuana in a cigarette box on the arrestee's person. A conviction resulting from this evidence was similarly affirmed by the Supreme Court.[4] As a basis for its decisions,

---

[3] Justice Powell concurred in a separate opinion. 94 S. Ct. at 494. Justice Marshall dissented in an opinion in which Justices Douglas and Brennan joined. *Id.* at 477.

[4] Justice Rehnquist wrote the opinion of the Court. Justices Stewart and Powell concurred in separate opinions. 94 S. Ct. at 492, 494. Justice Marshall dissented in an opinion in which Justices Douglas and Brennan joined. *Id.* at 493.

the Court expressly declined to hold significant any suspicions the arresting officers may have had that the arrestees were armed or in possession of contraband. *Gustafson v. Florida, supra* at 492. Instead, the Court held:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Robinson v. United States, supra* at 477.

In our interpretation of the United States Constitution, of course, we are bound to follow applicable pronouncements by the United States Supreme Court. There is no doubt that the search conducted in this case was reasonable under the fourth amendment as construed in *Robinson* and *Gustafson*. We have already indicated that the defendant's search at the police station was incident to her custodial arrest; assuming that arrest to be lawful, the search of her body and all personal effects in her possession[5] did not violate her federal

---

[5] There can be no meaningful distinction based on the fourth amendment among opening a folded piece of tissue (this case), opening a cigarette package *(Robinson)* and opening a cigarette box *(Gustafson)*. In each case, under the reasoning of the United States Supreme Court, the lawful custodial arrest alone gave the police authority to violate whatever privacy interest in the contents of the receptacles the arrestees may have had. Indeed, by thus severing the connection between the authority to search and any reason to search other than the fact of lawful custody, *Robinson* and *Gustafson* have seemingly sanctioned minuscule scrutiny by the police into any and all items an arrestee in custody may happen to have in his possession — including, for example, the wallet of a businessman arrested for driving without a license, or the confidential papers of a lawyer arrested for a traffic offense. *See* United States v. Robinson, *supra* at 487 (Marshall, J., dissenting).

constitutional rights since "the fact of [her] lawful arrest" alone gave the police plenary authority to subject her to a detailed search.

However, as the ultimate judicial tribunal in this state, this court has final, unreviewable authority to interpret and enforce the Hawaii Constitution. We have not hesitated in the past to extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions in the Federal Bill of Rights when logic and a sound regard for the purposes of those protections have so warranted. *See State v. Santiago*, 53 Haw. 254, 265, 492 P.2d 657, 664 (1971). In our view, the right to be free of "unreasonable" searches and seizures under article I, section 5 of the Hawaii Constitution[6] is enforceable by a rule of reason which requires that governmental intrusions into the personal privacy of citizens of this State be no greater in intensity than absolutely necessary under the circumstances. In cases of searches incident to arrests, a contrary holding would lend unprecedented power to the police to subject individuals under custodial arrest for even the most trivial offenses to the indignities of an exhaustive body search when no articulable reason supports such an intrusion other than the bare fact that the arrestee is in custody. As Justice Marshall points out in his dissenting opinion in *Robinson*, 94 S. Ct. at 482, the extent of such a power would introduce serious dangers of abuse.

Certainly we are not prepared to hold, in interpreting the

---

[6] In addition to the right to be free of unreasonable searches and seizures, the Hawaii Constitution guarantees the right to be free of unreasonable invasions of privacy. We need not decide the exact meaning or scope of this latter protection here, however, see State v. Roy, 54 Haw. 513, 518, 510 P.2d 1066, 1069 (1973) (Levinson, J., concurring), since we are of the opinion that *as a search and seizure,* the conduct of the police in this case was unreasonable. While this results in a divergence of meaning between words which are the same in both the federal and state constitutions, the system of federalism envisaged by the United States Constitution tolerates such divergence where the result is *greater* protection of individual rights under state law than under federal law. *See* State v. Texeira, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967). In this respect, the opinion of the United States Supreme Court on the meaning of the phrase "unreasonable searches and and seizures" is merely another source of authority, admittedly to be afforded respectful consideration, but which we are free to accept or reject in establishing the outer limits of protection afforded by article I, section 5 of the Hawaii Constitution. Compare State v. Davenport, 55 Haw. 90, 97 n.6, 516 P.2d 65, 71 n.6 (1973).

Hawaii Constitution, that since a lawful custodial arrest is a significant intrusion into an individual's privacy, further, "lesser" intrusions may be made without regard for their justifications. *Cf. Chambers v. Maroney*, 399 U. S. 42, 61-65 (1970) (Harlan, J., dissenting). Indeed, we cannot say that a strip search is a "lesser" intrusion into an individual's privacy than his loss of freedom by arrest. The integrity of one's person — including the right to be free of arbitrary probing by government officials into the contents of the personal effects in one's possession — is at least as significant in terms of human dignity as the right to be free of externally imposed confinement. As an earlier constituted United States Supreme Court stated in *Chimel v. California*, 395 U.S. 752, 767 n.12 (1969):

> [W]e can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require.

In this case, the defendant was arrested for attempted robbery. Since robbery is by nature a violent crime, and especially since information indicated that one of the male suspects had been armed with a pistol, it was perfectly reasonable for matron Mehau to search the defendant for weapons. Compare *Terry v. Ohio, supra*. While there could have been no fruits of the crime of attempted robbery, it was also proper for matron Mehau to search the defendant for implements which may have been used to commit the crime. Neither of these justifications, however, authorized matron Mehau to open the tissue-paper packet which the defendant held in her brassiere. As Chief Justice Richardson stated in his opinion for the court in *State v. Hanawahine*, 50 Haw. 461, 464, 443 P.2d 149, 151-52 (1968) (emphasis added), once probable cause is found for an arrest, a search incidental thereto

> is further limited in scope to a situation where it is *reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is ar-*

*rested,* or to protect the officer from attack, or to prevent the offender from escaping.

From an objective standpoint, it was unlikely that the small packet secreted a weapon which the defendant could have used to escape or harm her captors; even if it had contained a small weapon, such as a razor blade, once the packet was in matron Mehau's possession there was no further danger that the defendant could use it. *See Gustafson v. Florida, supra* at 493 (1973) (Marshall, J., dissenting); *State v. O'Neal*, 251 Ore. 163, 444 P.2d 951 (1968). Indeed, matron Mehau herself testified that she had no suspicion that the packet contained a weapon. Furthermore, it is difficult to imagine what "instrumentalities" of the crime of attempted robbery could have been located in the packet. Certainly matron Mehau had neither a belief that it contained instrumentalities nor any grounds to suspect that it contained drugs. Her sole purpose in unfolding the tissue was to satisfy her curiosity — a purpose which is clearly improper. *See Sibron v. New York, supra.*

In the circumstances, we hold that matron Mehau acted unreasonably in opening the defendant's packet. The defendant had a legitimate interest in the privacy of her possessions even though she was under arrest. Absent reasonable and articulable grounds to violate this continuing right of privacy, the State was constrained from doing so by article I, section 5 of the Hawaii Constitution.[7]

Today's construction of the Hawaii Constitution should not hamper the police in the legitimate exercise of their authority. We merely hold that each case of search and

---

[7] The State points to the defendant's voluntary submission of the packet to matron Mehau, accompanied by the statement "This is all I have," as a form of consent to the search. We reject this contention. There was no doubt at the time that matron Mehau planned to subject the defendant to a thorough-going body search, with or without her consent. Standing in her underwear before matron Mehau's inquisitive gaze, the defendant's act of handing over the packet was thus no more than a "submission to authority," which could not constitute an "understanding and intentional waiver of a constitutional right." Johnson v. United States, 333 U.S. 10, 13 (1948); *cf.* Bumper v. North Carolina, 391 U.S. 543, 546-50 (1968). In any event, the defendant's words and acts, even if construed as a voluntary relinquishment of possession of the packet, could not in themselves have given matron Mehau authority to probe its contents.

seizure without a warrant must turn on its own facts, and that each proffered justification for a warrantless search must meet the test of necessity inherent in the concept of reasonableness. Basically, where the nature of the offense makes it reasonable to assume that evidence of that offense may be located on the arrestee's person or in the belongings in his possession at the time of the arrest, then the police may search those areas without a warrant.[8] *State v. Park*, 50 Haw. 275, 439 P.2d 212 (1968). Similarly, where the nature of the offense or the circumstances of arrest give rise to a legitimate and reasonable apprehension on the part of the arresting officer that the arrestee is armed and dangerous, a protective search for weapons is justified. *See State v. Onishi*, 53 Haw. 593, 499 P.2d 657 (1972); *cf. Terry v. Ohio, supra*. Moreover, if in the course of a lawful search incident to arrest the police inadvertently discover evidence of a crime other than that for which the arrest was made, today's opinion does not prohibit them from seizing it and subsequently using it as evidence against the arrestee. *Cf. State v. Davenport, supra* at 100-01, 516 P.2d at 72.

In sum, we hold that a search incident to a valid custodial arrest does not give rise to a unique right to search; instead, the circumstances surrounding the arrest generate the authority to search without a warrant. If these circumstances show a legitimate basis for a search — such as protection of the arresting officer or preservation of evidence of the crime for which the arrest is made — then a search is lawful only if no broader than necessary in light of the justification. A search which exceeds this scope is a search without reason. And a search without reason we regard as manifestly "unreasonable" under the Hawaii Constitution.

## B. *Pre-Incarceration Search*

The foregoing principles have broad applicability to all warrantless searches, regardless of the basis for exception to

---

[8] In the typical drug arrest, for example, the nature of the offense necessarily gives the police broad latitude to search the arrestee's person for contraband which could be easily secreted and destroyed. *See, e.g.*, State v. McElroy, 189 Neb. 376, 202 N.W.2d 752 (1972).

the warrant requirement urged as support for their validity. Nonetheless, the State would have us uphold the search in this case as a valid warrantless search made in preparation for the defendant's incarceration. Under the "jail house search" exception to the warrant requirement, the State asserts, an arrestee may be searched prior to his imprisonment for two purposes: (1) to prevent the entry into jail of weapons or harmful drugs, and (2) to inventory his belongings to facilitate the processing of subsequent claims for loss or damage to them. *See Brett v. United States*, 412 F.2d 401 (5th Cir. 1969).

Of course, a "jail house search" is no less a search under the federal and state constitutions simply because it may have non-investigatory purposes. It is the fact alone of the government intrusion into individual privacy which invokes constitutional restraints. *See Mozzetti v. Superior Court*, 4 Cal. 3d 699, 706-07, 484 P.2d 84, 88, 94 Cal. Rptr. 412, 416 (1971). While the police have valid reasons to conduct a limited pre-incarceration search, it is clear from the reasoning of the first part of this opinion that such a search should be no broader than necessary in light of those reasons. *United States v. Robinson, supra* at 487 n.7 (Marshall, J., dissenting). In view of the construction given the fourth amendment in the *Robinson* and *Gustafson* cases, however, we must rest our decision with respect to the parameters of this exception to the warrant requirement on article I, section 5 of the Hawaii Constitution.

We hold that the police have full authority to prohibit the entry of weapons, drugs or other potentially harmful items into jail. To this end, they may require internees to surrender *any* possible repositories for such items prior to incarceration. However, a concomitant of this wide authority to prohibit the entry of personal belongings which may harbor forbidden contents is a complete *absence* of authority to conduct a general exploratory search of the belongings themselves.[9] This absence of authority derives from the lack

---

[9] Of course, if in the process of a lawful pre-incarceration search the police obtain probable cause to believe that the internee is then and there committing an offense other than that for which he was arrested, they may conduct a second search incident

of any justification for such a further search inherent in the exception itself. Once the internee has turned over his possessions for safekeeping it is no longer possible that he may take them into jail. We adhere to the following view expressed in *Brett v. United States, supra* at 406:

> We are not prepared to say that an accused whose effects are held by the police for safekeeping has, by the single fact alone of the police custody of the property, surrendered his expectations of the privacy of those effects.

*Accord, United States v. Jones,* 317 F. Supp. 856 (E.D. Tenn. 1970). *But cf. In re One 1965 Econoline,* 109 Ariz. 433, 511 P.2d 168 (1973).

Accordingly, once the defendant in this case surrendered her packet to matron Mehau, the interest of the State in preventing its entry into jail was completely satisfied. A subsequent search into the contents of the packet was therefore unwarranted under the rationale of this limited exception to the warrant requirement.

Nor did the need to inventory the defendant's possessions serve as a justification for probing the contents of the packet. The government's interest in protecting itself against fraudulent post-incarceration claims of loss or damage to property is at best a tenuous reason for infringing the privacy of an individual's belongings. Consequently, an inventory search should be rigidly circumscribed in scope, perhaps more so than any other type of justified warrantless search. To the extent that the basic purposes of an inventory search can be accomplished by means which are less intrusive on an internee's privacy, then the constitutional rule of reason requires such means to be employed. *See Mozzetti v. Superior Court, supra.* Certainly matron Mehau could have "inventoried" the defendant's packet without opening it. For ex-

---

to arrest geared in scope to the nature of the new offense. *Cf.* State v. Elkins, 245 Ore. 279, 283, 422 P.2d 250, 252 (1966). In the present case, for example, it would have been proper for matron Mehau to open the defendant's packet *if* she had had probable cause to believe that the packet contained unlawful drugs, and therefore, that the defendant was committing the continuing offense of unlawful possession of those drugs. As noted already, however, matron Mehau had no belief, reasonable or otherwise, that there were drugs in the defendant's packet.

ample, all of the defendant's belongings could have been tabulated and placed, unopened, into a sealed envelope at the time of her booking; the police might even have required the defendant to sign a waiver releasing them of responsibility for the contents of unopened items, thereby affording her a choice whether to relinquish her right of privacy in the packet's contents. *See United States v. Robinson, supra* at 487 n.7 (Marshall, J., dissenting). Since probing the contents of the defendant's packet was unnecessary to accomplish the ends of warrantless inventory search, it follows necessarily that that search was "unreasonable" under the Hawaii Constitution.

The suppression order of Judge Lanham is affirmed.

*Richard D. Wurdeman,* Deputy Prosecuting Attorney, City & County of Honolulu (*Barry Chung,* Prosecuting Attorney, of counsel) for plaintiff-appellant.

*Marie N. Milks* and *Gordon Uechi,* Deputy Public Defenders (*Donald K. Tsukiyama,* Public Defender, of counsel) for defendant-appellee.