LAW LIBRARY

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

STATE OF HAWAI'I, Plaintiff-Appellant, v.
MARCO RODRIGUES, Defendant-Appellee

NO. 29759

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 08-1-0293)

JANUARY 28, 2010

NAKAMURA, CHIEF JUDGE, FUJISE and LEONARD, JJ.

OPINION OF THE COURT BY LEONARD, J.

Plaintiff-Appellant the State of Hawai'i (**State**)
appeals the Findings of Facts, Conclusions of Law and Order
Granting Defendant's Motion to Suppress Evidence (**Suppression
Order**), filed on March 17, 2009 in the Circuit Court of the Fifth
Circuit (**Circuit Court**).[1]

On appeal, the State claims that the Circuit Court
erred by suppressing evidence recovered from Defendant-Appellee
Marco Paulo Rodrigues (**Rodrigues**) during a warrantless search of
his pockets after Rodrigues had been placed under arrest for
outstanding bench warrants. The State argues, primarily, that a
clear ziploc baggie containing methamphetamine inevitably would
have been discovered during an inventory search of Rodrigues's
pockets at the police cell block because Rodrigues was already
under arrest. For the reasons set forth below, we vacate the

---

[1] The Honorable Kathleen N.A. Watanabe presided.

Suppression Order and remand this case to the Circuit Court for the entry of findings of fact and further legal conclusions regarding whether the State met its burden of establishing, by clear and convincing evidence, that the baggie would have been inevitably discovered.

I. BACKGROUND

On November 25, 2008, Rodrigues was charged by complaint with Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (Supp. 2008).

On February 18, 2009, Rodrigues filed a Motion to Suppress Items of Evidence (**Motion to Suppress**). Rodrigues claimed that evidence obtained from a warrantless search of his pockets by Officer Scott Williamson (**Officer Williamson**) should be suppressed because it was in violation of his rights under article I, section 7 of the Constitution of the State of Hawai'i and the Fourth and Fourteenth Amendments of the United States Constitution.

On February 26, 2009, the State filed an opposition to Defendant's Motion to Suppress. The State initially argued that the drugs discovered in Rodrigues's pocket were recovered during a valid search incident to a lawful arrest. The State claimed that Officer Williamson's practice, when conducting a search incident to a lawful arrest in a known drug trafficking area, "is to pull out an arrestee's pockets from the top, visible area." The State based its arguments on an officer's need for safety because "[p]ockets may contain syringes or razor blades," and the officer "runs the risk of puncturing his or her skin in a hazardous manner." In the alternative, the State argued that the drugs would have been "inevitably discovered during a pre-incarceration search at KPD cellblock," during a custodial search to prevent introduction of weapons and dangerous drugs into the custodial environment.

At a March 3, 2009 hearing on the Motion to Suppress, Officer Williamson testified that he initially saw Rodrigues asleep in his vehicle, which was parked in Hanama'ulu Beach Park on Kauai, and the vehicle had an "expired safety." After Rodrigues could not produce a vehicle license and registration, a check of his name revealed that Rodrigues had outstanding bench warrants. Officer Williamson then placed Rodrigues under arrest.

Officer Williamson proceeded to conduct a search incident to arrest by searching Rodrigues from top to bottom. Officer Williamson testified: "When I reached his pockets, I pulled his pockets from the outside looking for any weapons or means of escape, needles, razor blades, strong fishing line, that type of thing, matches." Officer Williamson stated that he pulled out the pockets rather than patting the outside of the pockets because there might have been a needle or sharp object in it and, with a pat-down, he would have the risk of cutting his hand through the clothing. A clear Ziploc-type baggie came out of Rodrigues's left pocket and it appeared to contain crystal methamphetamine. Officer Williamson then transported Rodrigues to the Kauai Police Department (**KPD**) cell block. Officer Williamson testified that at the cell block, he would have searched Rodrigues and inventoried all items, including items from Rodrigues's pockets, shoes, and any other area where something could be hidden.

Upon cross examination, Officer Williamson testified that he had no reason to believe that Rodrigues was concealing any weapons, drugs, needles, or other drug paraphernalia or contraband. During redirect examination, Officer Williamson testified that he searches everyone the same way because that was the way he was trained to do it.

Sergeant Eric Kaui (**Sergeant Kaui**), a 22-year KPD veteran who was in charge of the cellblock area, then testified about the procedures for handling incoming detainees into the

cellblock area. Sergeant Kaui stated that officers bringing arrestees into the cellblock area are responsible for conducting a thorough search of the arrestee, including all areas of clothing, such as pockets, shoe laces, and belt. On cross-examination, defense counsel questioned Sergeant Kaui about the standard procedures for searching a person in the field. Sergeant Kaui testified that the standard techniques that he was taught may not be the same as the ones currently taught. He also testified that he was not sure what standard procedures were being taught, that the training was uniform throughout the department, but that he had not gone back for retraining.

During the Circuit Court proceedings, the State did not concede that the search of Rodrigues was impermissible. However, the State argued that even if the search was invalid, the drugs would have been found when Rodrigues entered the cellblock.

In granting the Motion to Suppress, the Circuit Court stated:

> Now, again, looking at State v. Enos, State v. Kaluna, the Silva case, as referenced by Mr. Acoba, this Court is concerned because it appears that the argument by the State is that it doesn't matter what happens on the field search, because whatever is found when the defendant is brought into cell block will justify the scope and breadth of the search that was done in the field. And that is really troublesome.
>
> I am not so concerned about any inconsistencies that were pointed out by Mr. Acoba between Sergeant Kaui and Officer Williamson. You know, the focus here is on what happened in this particular case. And I believe the questions that were posed to Sergeant Kaui resulted in the responses that were given.
>
> However, based on State v. Enos, and based on the presumption of unreasonable searches and the burden being on the State, the Court is in agreement with the defenses made by Mr. Acoba. I fail to see the connection between the reason for the arrest and the items that were searched and discovered.
>
> I think State v. Enos is on point. And, in that case, which again, both counsel referenced, you know, the Supreme Court did not buy the argument that the inevitable discovery - - the inevitable discovery exception was applicable. And the same here. The Court is not persuaded by the State's argument that this search can be justified by a search incident to a lawful arrest.

On March 17, 2009, the Circuit Court entered the Suppression Order which stated the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

1. On November 23, 2008 at approximately 7:54 a.m., Kauai Police Department Officer Scott Williamson saw Defendant Rodrigues sleeping in a silver two-door Hyundai at Hanamaulu Beach Park.

3. [sic] Officer Williamson noticed that the safety check and vehicle registration stickers were expired on the vehicle.

4. Officer Williamson woke Defendant Rodrigues and asked him for identification.

5. Defendant Rodrigues could not provide Officer Williamson any identification or information pertaining to the vehicle.

6. Officer Williamson called police dispatch to request any information on Defendant Rodrigues.

7. Officer Williamson discovered that Defendant Rodrigues had three outstanding bench warrants with aggregate bail totaling one thousand dollars.

8. Officer Williamson arrested Defendant Rodrigues for the outstanding bench warrants and handcuffed him.

9. Officer Williamson conducted a pat-down search on Defendant's torso but when he got to Defendant's shorts, Officer Williamson turned the pockets inside out.

10. Officer Williamson testified that for his safety it was his practice that when he conducts a search of an arrestee he pulls out the arrestee's pockets from the top rather than doing a pat-down search.

12. [sic] As Officer Williamson turned Defendant's left shorts pocket inside out, he found a clear zip-loc baggie that contained a crystal-like substance in Defendant's left front pocket.

9. [sic] Officer Williamson placed Defendant Rodrigues in his police vehicle and transported him to police cellblock in Lihue.

5

CONCLUSIONS OF LAW

1. [The] Fourth Amendment to the United States Constitution protects the rights of citizens to be free from unreasonable searches and seizures.

2. Article I, Section 7 of the Hawaii Constitution is identical to the Fourth Amendment to the United States Constitution.

3. Any warrantless search or seizure is presumed to be illegal and the burden always rests with the government to prove that such actions fall within a specifically established and well-delineated exception to the warrant requirement. State v. Ortiz, 67 Haw. 181, 683 P.2d 822 (1984).

4. An officer is entitled to conduct a pat-down search of an arrestee for weapons incident to the arrest. State v. Enos, 68 Haw. 509, 511, 720 P.2d 1012, 1014 (1986).

5. A pat-down search for weapons, however, does not authorize an Officer to remove items from an arrestee's pocket unless that Officer has reason to believe that the items felt are fruits or instrumentalities of the crime for which the defendant is arrested, or to protect the officer from attack, or to prevent the offender from escaping. See Enos, 68 Haw. at 510-511, 720 P.2d at 1013-14.

6. Officer Williamson testified that the reason for pulling out Defendant's pockets were [sic] for Officer Williamson's safety.

7. Officer Williamson went beyond the scope permissible in a search incident to an arrest given the totality of the circumstances.

8. Officer Williamson arrested Defendant for contempt of court. Officer Williamson had no information that Defendant was in possession of any contraband, weapons, or instrumentalities that could aid Defendant in escaping.

The State timely filed this appeal.

## II.  STANDARD OF REVIEW

The Hawai'i Supreme Court has repeatedly stated the standard of review on appeal from a ruling on a motion to suppress:

> A trial court's ruling on a motion to suppress evidence is reviewed de novo to determine whether the ruling was "right" or "wrong." State v. Edwards, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (citing State v. Jenkins, 93

> Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. See State v. Wilson, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999) (citations omitted).
>
> [State v. Kaleohano, 99 Hawai'i 370, 375, 56 P.3d 138, 143 (2002)].

State v. Spillner, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

III. POINTS OF ERROR

On appeal, the State does not challenge the Circuit Court's conclusion that Officer Williamson's warrantless search and seizure, beyond the pat-down for weapons, violated Rodrigues's rights under the Hawai'i Constitution. The State raises the following points of error:

1. The Circuit Court erred when it concluded, based on State v. Enos, 68 Haw. 509, 720 P.2d 1012 (1986), that the inevitable discovery rule was inapplicable to this case;

2. The Circuit Court erred when it rejected the State's argument that the baggie containing methamphetamine was admissible pursuant to the inevitable discovery rule, without entering findings of fact upon which its rejection of the State's argument was based; and

3. The Circuit Court erred when it concluded that the State failed to establish, by clear and convincing evidence, that the baggie containing methamphetamine was admissible pursuant to the inevitable discovery rule.

IV. DISCUSSION

A. The Illegal Search

The State concedes on appeal that, under Enos, Officer Williamson's conduct in emptying Rodrigues's pockets violated Rodrigues's rights under the Hawai'i Constitution. As Enos is binding upon this court - as well as KPD - and is central to the

Circuit Court's ruling and the parties' disagreement, we carefully consider the circumstances and holding in that brief, but instructive, opinion:

> [Enos] was convicted of driving under the influence in violation of HRS § 291-4 and of promoting a dangerous drug in the third degree in violation of HRS § 712-1243.
>
> [Enos] appeals the drug conviction, contending that the court below erred in not suppressing as evidence four heat-sealed, clear plastic cellophane bags, containing a white powdery substance, found in, and removed from [Enos]'s pants pockets, during a search following his arrest on the drunken driving charge, as well as statements thereafter made by him. The parties have stipulated that [Enos]'s later statements were the fruit of the poisonous tree and stand or fall on the validity of the search and seizure of the four packets.
>
> On the authority of State v. Kaluna, 55 Haw. 361, 520 P.2d 51 (1974), we reverse because, as that case held, the search and the seizure of the cellophane packets violated Article I, section 7 of the Constitution of the State of Hawaii.
>
> The court below entered findings of fact and conclusions of law which set out the salient facts. [Enos] was traveling in excess of the posted speed limit. Because of that, he was pulled over by Officer Yomes who, on approaching the car, observed [Enos] to have watery, bloodshot eyes, slurred speech and a strong odor of alcoholic beverage. He was asked to exit the car and perform the standard field sobriety tests, which he failed. The officer thereupon placed him under arrest. As the court below found:
>
> > 6. ... Officer Yomes then conducted a pat-down search of the Defendant for weapons and contraband without any prior knowledge or suspicion of weapons or contraband on Defendant's person prior to placing him in the police vehicle.
> >
> > 7. During the pat-down search, Officer Yomes felt what appeared to be cellophane packets in the Defendant's left front pants pocket. Based on his prior experience in narcotics investigations, Officer Yomes suspected that the packets contained contraband. On that basis, he removed the packets from the Defendant and seized them as evidence.
>
> There is no dispute as to these findings. The court below held that the search in question was one incident to a lawful arrest, a recognized exception to the usual requirement that the officer have a warrant prior to conducting the search.
>
> The Supreme Court of the United States over a dozen years ago decided that the exact type of search and seizure here involved, would be permissible, under the Fourth

Amendment to the Constitution of the United States, as a search incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

In Kaluna, supra, this court recognized the authority of those decisions as regards to the federal constitution, but expressly rejected them as a guide in interpreting the parallel state constitutional provision.

This court stated:

[O]nce probable cause is found for an arrest, a search incidental thereto is further limited in scope to a situation where it is <u>reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is arrested</u>, or to protect the officer from attack, or to prevent the offender from escaping.

State v. Kaluna, 55 Haw. 361, 370-71, 520 P.2d 51, 59 (quoting State v. Hanawahine, 50 Haw. 461, 464, 443 P.2d 149, 151-52 (1968)) (emphasis in original).

We have repeatedly upheld the right of an officer making an arrest to take reasonable and appropriate steps to protect himself from possible weapons to which the arrestee may have access. State v. Barrett, 67 Haw. 650, 701 P.2d 1277 (1985); State v. Ortiz, 67 Haw. 181, 683 P.2d 822 (1984); State v. Kaluna, supra. We think it clear that on an arrest for drunken driving, it is per se reasonable for an officer to conduct a pat-down for weapons.

Here, the officer found no weapons. On this record, there was nothing to indicate that there were, concealed on the person of [Enos], any fruits or instrumentalities of the crime of drunken driving. Given the finding by the court, which was in accord with the testimony, that the officer was without any prior knowledge or suspicion of the existence of contraband, the warrantless search and seizure, beyond the pat-down for weapons, violated [Enos]'s rights under the Constitution of the State of Hawaii. The order denying a suppression of the four cellophane packets was error.

We are not dealing with an inventory search, which involves a different exception to the warrant requirement. Indeed, in the particular case, the arresting officer testified that he was required, by police department regulations, to make the unconstitutional search in question and was subject to discipline if a later inventory search turned up the evidence, and thus demonstrated that he had failed to make the search.

Police department regulations cannot set aside our construction of the constitution of this State. The Constitution of the State of Hawaii is not the analog of a looseleaf notebook. This court spoke directly on the present problem in Kaluna, supra. That holding was binding on the police and the court below. We reaffirm that holding and,

accordingly, reverse and remand for further proceedings consistent herewith.

Enos, 68 Haw. at 509-11, 720 P.2d at 1013-15.

Enos makes crystal clear that a pat-down search incident to arrest is per se reasonable and appropriate in order to protect the officer from possible weapons.  However, a search incident to arrest must be limited in scope to what is "reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is arrested, or to protect the officer from attack, or to prevent the offender from escaping."  Id. at 511, 720 P.2d at 1014 (citations and emphasis omitted).  Without a doubt, Officer Williamson's actions in turning Rodrigues's pockets inside-out violated that standard.

> B.    The Circuit Court Erroneously Relied on *Enos* to Reject the State's Inevitable Discovery Argument

The State argues that the Circuit Court erroneously relied on Enos as the basis for its rejection of the State's inevitable discovery argument.  We agree.  Enos is silent on the issue of the inevitable discovery exception to the exclusionary rule.[2/]  The inevitable discovery exception was adopted by the Hawai'i Supreme Court nine years after Enos, in State v. Lopez, 78 Hawai'i 433, 896 P.2d 889 (1995).

Notably, Rodrigues does not argue that the Circuit Court correctly relied on Enos to reject the applicability of the inevitable discovery exception in this case.  Instead, Rodrigues acknowledges the supreme court's holding in Lopez and argues that "the record lacks the clear and convincing evidence necessary to show that the clear plastic baggie would still have been in Mr. Rodrigues's left shorts pocket and inevitably discovered at the KPD cell block during the inventory search."  In support of this

---

[2/]    In fact, the Enos court specifically stated:  "We are not dealing with an inventory search, which involves a different exception to the warrant requirement."  Enos, 68 Haw. at 511, 720 P.2d at 1014.

proposition, Rodrigues cites several cases from other jurisdictions wherein defendants have been able to retrieve and discard similar baggies from their persons while handcuffed. See, e.g., Williams v. State, 784 S.W.2d 428 (Tex. Crim App. 1990) (police found cocaine beneath the patrol car's backseat where the handcuffed defendant was seated); State v. Jimeniz, 808 A.2d 1190 (Conn. App. 2002) (police officer found cocaine in backseat of police car after transporting defendant who had been handcuffed and frisked for weapons); Simmons v. State, 299 Ga. App. 21, 681 S.E.2d 712 (2009) (officer discovered cocaine wedged in backseat of police car even though defendant had been searched and handcuffed). Before we consider whether the State met its burden to establish that Rodrigues's plastic baggie inevitably would have been discovered, we must consider the inevitable discovery exception to the exclusionary rule as adopted by the supreme court in Lopez.

In Lopez, a container of cocaine was found in the defendants' home by a detective who entered the home without a warrant or the defendants' consent, and evidence of cocaine delivery subsequently was obtained with a search warrant based on the detective's discovery of cocaine during his prior illegal search. Lopez 78 Hawaiʻi at 438, 896 P.2d at 894. All evidence of contraband was suppressed by the circuit court and the State appealed. Id. at 437, 896 P.2d at 893. On appeal, the supreme court rejected the State's arguments that the initial search did not violate the defendants' constitutional rights and that, even if the defendants' rights were violated, the independent source exception to the exclusionary rule applied. Id. at 447-48, 896 P.2d at 903-04. The Lopez court then discussed, adopted, and established the scope of the inevitable discovery exception to the exclusionary rule under the Hawaiʻi Constitution, but declined to apply it because the State had not met its burden to

demonstrate that the evidence of cocaine delivery inevitably would have been discovered.  Id. at 448-55, 896 P.2d at 904-11.

In Lopez, the supreme court held that evidence recovered from an otherwise illegal search is not suppressed if the evidence would have been inevitably discovered by the police via lawful means.  Id. at 450-51, 896 P.2d at 906-07, citing Nix v. Williams, 467 U.S. 431 (1984).  The court further held that the prosecution must present clear and convincing evidence that any illegally obtained evidence inevitably would have been discovered by lawful means before such evidence may be admitted pursuant to the inevitable discovery exception.  Id. at 451, 896 P.2d at 907 (adopting Justice Brennan's dissenting opinion in Williams on this point).

Accordingly, in the present case, the Circuit Court erred when it relied exclusively on Enos, without regard to Lopez, to conclude that the inevitable discovery exception does not apply to the clear baggie containing a crystalline substance that Officer Williamson illegally seized from Rodrigues's pocket during the search incident to arrest.

C.    The Circuit Court's Findings of Fact

Citing Hawai'i Rules of Penal Procedure (**HRPP**) Rule 12(e), the State contends that the Circuit Court erred when it rejected the State's argument that the baggie containing a crystalline substance was admissible under the inevitable discovery rule without finding facts upon which its rejection was based.  Rodrigues does not respond to this argument, except to state that the record lacks the clear and convincing evidence necessary for the prosecution to meet its burden.

HRPP Rule 12 provides, in relevant part (emphasis added):

> (b)    **Pretrial motions.**  Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.  Motions may be written or oral at the discretion of the judge.  The following must be raised prior to trial:

12

. . . .
> (3) motions to suppress evidence or for return of property;
>
> (e) **Ruling on motion.** A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial. <u>Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.</u>

In <u>State v. Anderson</u>, 67 Haw. 513, 693 P.2d 1029 (1985), in an appeal from an order granting a motion to suppress, the supreme court held:

> The validity of the alleged search and seizure depends on the weighing of a myriad of factual determinations. The lower court, however, made absolutely no findings of fact. It is impossible for this court to determine the factual basis for the lower court's ruling. Accordingly, we reverse and remand.

<u>Id.</u> at 513, 693 P.2d at 1029-30. <u>Anderson</u> relied on HRPP Rule 12(e) and the parallel federal rule in reaching this conclusion. <u>Id.</u> at 514, 694 P.2d at 1030 (citations omitted); <u>see</u> <u>also</u> <u>State v. Hutch</u>, 75 Haw. 307, 331, 861 P.2d 11, 23 (1993).

Although in this case the Circuit Court entered written findings of fact, the court entered no findings regarding the evidence supporting the State's inevitable discovery argument. Instead, as discussed above, the Circuit Court rejected the State's inevitable discovery argument based on its erroneous legal conclusion that <u>Enos</u> was controlling in this case. We conclude that HRPP Rule 12(e) is applicable here. As discussed above, we conclude that it is the province of the trial court, in the first instance, to assess the credibility of the police witnesses and determine whether the State presented clear and convincing evidence that the baggie found in Rodrigues's pocket would have been inevitably discovered during an inventory search at KPD cellblock. The Circuit Court erred in failing to state its essential findings on this issue.

D.    The Application of the Inevitable Discovery Exception

The State argues that, based on Lopez and this court's opinion in State v. Silva, 91 Hawaiʻi 111, 979 P.2d 1137 (App. 1999), this court must find that the Circuit Court erred by suppressing the baggie from evidence because there was clear and convincing evidence that the baggie would have been inevitably discovered during a lawful inventory search. Rodrigues argues that "Silva was, at the very least, uncritically analyzed, if not wrongly decided." Rodrigues alternatively argues that, even if Silva was correctly decided, it is distinguishable.

In Silva, a woman had called the police to report that a man was sleeping in his car, which was parked on her lawn. Silva, 91 Hawaiʻi at 112, 979 P.2d at 1138. After the police officer arrived, he woke the defendant. When asked for personal identification, the defendant said he had none, but stated that his name was Brandon Silva (**Silva**). Id. The officer asked Silva to exit the vehicle, discovered that Silva had three outstanding traffic warrants, and placed him under arrest. Id. During a search incident to Silva's arrest, the officer found a glass pipe and a clear packet of what appeared to the officer to be crystal methamphetamine. Id. Silva moved to suppress the evidence resulting from the search on multiple grounds. The circuit court concluded, inter alia, that the State had established, by clear and convincing evidence, that the contents of Silva's pockets would have been revealed during an inventory search and that there was nothing in the record to suggest that the contraband was in a closed container. On appeal, Silva challenged the circuit court's order denying his motion to suppress evidence. Silva contended that the police illegally ordered him to exit the vehicle, the warrant check was unlawful, and the State failed to meet its burden of proof to establish, by clear and convincing evidence, that the contents of Silva's pockets would have been

inevitably discovered during an inventory search. <u>Id.</u> at 112, 120, 979 P.2d at 1138, 1146.

With respect to the inevitable discovery rule adopted in <u>Lopez</u>, this court affirmed the circuit court's conclusion that the State met its burden of proof in <u>Silva</u>. Noting that neither the pipe nor the packet of crystal methamphetamine were in a closed container, and that Silva did not contest that the objects were in his pocket, the court concluded that it was clear that the evidence would have been discovered during an inventory search. <u>Id.</u> at 120-21, 979 P.2d at 1146-47, citing <u>State v. Kaluna</u>, 55 Haw. 361, 372-74, 520 P.2d 41, 60-61 (1974) (pre-incarceration inventory search that included the opening of a folded tissue containing capsules of a barbiturate exceeded the parameters of a permissible search because it exceeded the valid reasons for the search). On appeal, Silva contended that "there was insufficient evidence the circuit court's finding that the evidence would have been inevitably discovered by the police." <u>Id.</u> at 112, 979 P.2d at 1138. This court concluded that the circuit court's findings were not clearly erroneous. <u>Id.</u> at 121, 979 P.2d at 1147.[3]

Rodrigues's argument that <u>Silva</u> was wrongly decided is meritless. However, we do not read <u>Silva</u> to relieve the State of

_____

[3]    Judge Acoba (now Justice Acoba) wrote a concurrence in <u>Silva</u>, noting that the prerequisite for a warrant check under HRS § 803-6 is a lawful arrest and that the police placed Silva under arrest after and as a result of the warrant check. <u>Silva</u>, 91 Hawai'i at 112, 979 P.2d at 1138. Judge Acoba noted, however, that after Silva exited the car, he volunteered that he had traffic warrants. <u>Id.</u> Thus, he invited his further detention for a warrant check. <u>Id.</u> at 121-22, 979 P.2d at 1147. Judge Acoba concluded that: "The contraband was recovered following the arrest on the warrants, and validly so, as incident to arrest under the police version of the events, or pursuant to the inevitable discovery rule under [Silva's] recounting of the episode." <u>Id.</u> at 122, 979 P.2d at 1147-48. On a petition for writ of certiorari, the Hawai'i Supreme Court affirmed the result reached by this court in <u>Silva</u>. <u>State v. Silva</u>, 91 Hawai'i 80, 81, 979 P.2d 1106, 1107 (1999). However, the supreme court clarified that it did not read this court's majority opinion "as generally allowing the police to prolong the detention of individuals subjected to brief, temporary investigative stops--once such stops have failed to substantiate the reasonable suspicion that initially justified them--solely for the purpose of performing a check for outstanding warrants." <u>Id.</u>

its burden to present clear and convincing evidence that discovery of contraband would have been inevitable upon an inventory search at the police cellblock. In the instant case, the State presented the testimony of Officer Williamson and Sergeant Kaui concerning KPD procedures to support the inevitable discovery argument. Yet, the Circuit Court made no findings of fact regarding the credibility of the police officers or the weight given to their testimony in light of the other evidence and arguments related to the issue of inevitable discovery. The Circuit Court reached no conclusions regarding whether the State met its burden of proof, instead rejecting the applicability of the inevitable discovery exception as a matter of law. In the absence of the findings of fact required by HRPP Rule 12(e), it is not the role of the appellate court, in the first instance, to make determinations as to the credibility of the witnesses or the weight of the evidence. See, e.g., Hutch, 75 Haw. at 331, 861 P.2d at 23 ("Because findings of fact are imperative for an adequate judicial review of a lower court's conclusions of law, we have held "that cases will be remanded when the factual basis of the lower court's ruling cannot be determined from the record.") (citations, internal quotation marks, brackets, and ellipses omitted). Therefore, on this record, we decline to conclude that the State established, by clear and convincing evidence, that the baggie that was illegally seized from Rodrigues's pocket would have been inevitably discovered at KPD cellblock during an inventory search. We also decline to conclude, as a matter of law, that the State failed to meet its burden.

V.    CONCLUSION

        For these reasons, we vacate the Circuit Court's March 17, 2009 Suppression Order and remand this case for further proceedings consistent with this opinion.

On the briefs:

Tracy Murakami
Deputy Prosecuting Attorney
for Plaintiff-Appellant

James S. Tabe
Deputy Public Defender
for Defendant-Appellee

17