LAW LIBRARY

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

NO. 29615

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee
v.
PETER TIA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-0985)

MEMORANDUM OPINION
(By: Fujise and Ginoza, JJ. with
Foley, Presiding Judge, dissenting separately)

Defendant-Appellant Peter Tia (Tia) appeals from the Amended Judgment of Conviction and Sentence entered on January 29, 2009 in the Circuit Court of the First Circuit (circuit court).[1] Tia argues on appeal that the circuit court erred in denying his motion to suppress evidence because the evidence in question was obtained due to an improper pat-down search incident to a lawful arrest.

Based upon a careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we agree that the trial court erred and Tia's motion to suppress should have been granted.

I.   STATEMENT OF FACTS

On June 24, 2008, Plaintiff-Appellee State of Hawai'i (State) filed a felony information charging Tia with "knowingly possess[ing] the drug cocaine, thereby committing the offense of Promoting a Dangerous Drug in the Third Degree, in violation of Section 712-1243 of the Hawaii Revised Statutes [HRS]."[2]

---

[1]  The Honorable Randal K.O. Lee presided.

[2]  HRS § 712-1243, entitled "[p]romoting a dangerous drug in the third degree," reads as follows: "(1) [a] person commits the offense of promoting a
(continued...)

On August 25, 2008, Tia filed a Motion to Suppress Evidence, requesting that the circuit court suppress any physical evidence, testimony, or documentation of a packet and its contents, allegedly cocaine. Tia asserted that such evidence was seized from him in violation of his constitutional rights and argued that, while it is permissible to pat-down an arrestee incident to a lawful arrest, the pat-down search in this case was illegal because it was overly intrusive.

On September 4, 2008, the State filed a Memorandum in Opposition to Defendant's Motion to Suppress Evidence, arguing that the pat-down search was proper, the packet came into plain view during the pat-down search, and that the packet would have been inevitably discovered during a pre-incarceration search.

On September 23, 2008, a hearing was held on the suppression motion. Honolulu Police Department (HPD) Officer Daniel Sellers (Officer Sellers) was the only witness to testify at the hearing. Officer Sellers testified he was on routine patrol on June 23, 2008 and as he drove makai-bound on Nu'uanu Avenue, he recognized Tia sitting at a bus stop just makai of Pauahi Street. Officer Sellers believed that Tia had an outstanding warrant for a narcotics-related arrest and called HPD to verify his belief. Upon confirming with HPD records personnel that there was a $75,000 warrant for Tia's arrest, Officer Sellers returned to the bus stop where he had seen Tia. Tia was no longer at the bus stop, but Officer Sellers guessed that Tia was likely in a nearby bar because it was the only place open. Another officer, Officer Nahulu, soon arrived to assist in the transport of Tia. Officer Sellers located Tia at the bar, approached Tia and asked him to step outside. Tia voluntarily complied, and once outside Officer Sellers notified Tia that Tia was being arrested for the outstanding warrant. Officer Sellers

---

[2](...continued)
dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount. (2) [p]romoting a dangerous drug in the third degree is a class C felony." HRS § 712-1243 (2007).

handcuffed Tia and walked Tia to Officer Nahulu's transport vehicle.

Officer Sellers testified that as he patted down Tia's right front shorts pocket, he:

> felt a hard cylindrical object in which I had no idea at the time what it was, so I made the decision to take it out during -- prior to transport, because I didn't know if it was a weapon or could contain a weapon.  I reached inside Mr. Tia's right pocket and removed this cylindrical object, which as soon as I pulled and exposed it from the pocket, I could see that it was an M&M's container.  I continued to pull it out, in which that time a clear plastic Ziploc bag containing rock-like objects resembling that of cocaine fell to the ground as I pulled the M&M's container out of his pocket.

When asked whether the cocaine packet was inside or next to the M&M's container, Officer Sellers responded that he:

> believe[d] it had to have been next to it, because when I reached into his pocket, I grasped only the element -- I'm sorry, M&M's container, and when I pulled it out, the packet must have been loose in Mr. Tia's pocket as it fell simultaneously as I pulled it out of his pocket.  So the cap on the M&M container was closed and remained closed until -- I mean, not until, but all the way until I submitted it in to evidence.

Officer Sellers further testified that he did not have to open anything to see the packet, and that he never opened the M&M's container.

On cross-examination, Officer Sellers noted that his initial police report indicated that he thought the hard cylindrical object could be a weapon.  He further testified that on other occasions he has "pulled out small little batons out of there, collapsible type of batons that are similar shape" and he did not want to take the chance of transporting Tia with a weapon or something he could use to escape.  When he reached into Tia's pocket, Officer Sellers was able to see the top of the M&M's container, which was a little sideways, and at that point he knew it was not a baton, but that it was a M&M's container.  However, he continued to remove the container because he was concerned it could contain a handcuff key which could possibly assist Tia as a means of escape.

Officer Sellers also briefly testified about the type of search Tia would undergo at the central receiving division, stating that Tia would have undergone a more thorough search at which time everything would be removed from his pockets.

On September 25, 2008, the court issued its ruling denying Tia's motion to suppress. After a recitation of the facts adduced at the hearing, the court stated:

> The Court finds that had the officer believed it was just a weapon when he pulled it out even midway and exposed that it was a candy container, obviously he knew that was not a weapon, so that falls by the wayside. Namely, once he exposed that it was an M&M's container, his reasonable belief that this was a weapon wasn't reasonable at that point.
>
> The Court finds that the officer nevertheless was reasonable to believe that the container may have had a means for escape, namely the officer had indicated through his testimony, and it's uncontroverted because there was no cross-examination or examination of the officer, that he had other occasion -- on other occasions seen people have handcuff keys in containers.
>
> His actions is [sic] also consistent because the search was prior to placing the defendant into the transport car. The officer never opened up the container, he just removed it for safe keeping. When he pulled the container out, a ziploc bag containing a substance, which later was the substance, fell out of the pocket and therefore was exposed.
>
> The Court finds that the motion to suppress evidence is denied based on the search incident to lawful arrest as well as the subsequent exposure of the item based on the search.
>
> The state also proffers an argument, namely inevitable discovery, and the argument or the defense of the claim of inevitable discovery would be valid in this case, however, the officer's testimony fell short of the claim of inevitable discovery. As the supreme court has held, the burden is on the state to prove by clear and convincing evidence that inevitable discovery is warranted in this case.
>
> The officer testified in passing generally that people who are arrested are taken down and they're searched. We don't know -- and the Court cannot just make a presumption that this is done on [sic] every case, so therefore, as the basis for inevitable discovery, although it's a valid -- that would make a valid exception to the search in this case, the evidence by the officer wasn't sufficient in terms of clear and convincing.
>
> So the Court does grant -- does deny the motion to suppress evidence, finding that the search was incident to a lawful arrest, and will prepare the order as such.

On October 6, 2008, the circuit court issued findings of fact and conclusions of law[3] in an order denying the motion to suppress. Relevant portions of the circuit court's findings of fact and conclusions of law state:

FINDINGS OF FACT

. . . .

12. Upon arriving at the police transport vehicle, Officer Seller[s] began to conduct a pat down search of the Defendant immediately before placing Defendant into the transporting vehicle.

13. Officer Seller[s] testified that he conducted the pat down search to insure that the Defendant had no weapons or a means to escape prior to entering the police transport vehicle.

14. Officer Seller[s] testified that he didn't want to take a chance that the Defendant would be transported with a possible weapon or a means that he could use to escape.

15. While patting down Defendant's right front pocket, Officer Seller[s] felt a "hard, thick, cylindrical object tucked within the pocket." According to Officer Seller's [sic] affidavit . . . he was "unsure if [the] object could possibly by [sic] a weapon or contain a weapon, so [he] decided at the time to remove [the] unknown object prior to transport."

16. . . . Officer Seller[s] testified that at the time he felt the object in the Defendant's pocket, he believed that the object may have been a weapon or could be used as a means to escape. Officer Seller[s] testified that he believed that the items might have been a collapsible baton or a container containing a handcuff key.

17. Officer Seller[s] testified that as he began to pull the object out, he saw the top of the object and could see that the object was a ["]mini M&M's" candy container.

18. Officer Seller[s] stated that when he saw the candy container he believed that the container was not a weapon. However Officer Seller[s] testified that he still believed that the object could have been used as a means of escape and removed the container from the Defendant's pocket.

_____

[3] Footnotes to the court's findings of fact and conclusions of law have been incorporated into the body of the text.

19. Officer Seller[s] again stated that he removed the object from the Defendant's immediate possession since he believed that the container could have housed a handcuff key at the time and could be used for escape.

20. As Officer Seller[s] removed the object from the Defendant's pocket a small clear zip-lock bag containing [a] whitish rock-like object simultaneously fell to the sidewalk from the same pocket.

21. Officer Seller[s] stated in his Affidavit . . . that based on his training and experience in drug recognition, he immediately recognized the packing and the whitish rock-like objects within to be "crack cocaine."

22. Officer Seller[s] recovered the container, taking it out of the Defendant's possession, without further opening the container. At the hearing there was no evidence presented that Officer Seller[s] opened the container and further searched inside of the container.

23. Officer Seller[s] finally testified that persons arrested are taken to the police station and their pockets are searched. Although the Court, based on the Officer's general statement, could have arguably assumed that every arrestee received into the Central Receiving Division would have his or her pockets searched, it was unable to make such an assumption since there was no evidence to establish that the Officer had personal knowledge of the police procedures and policies for said proc[e]dures.

CONCLUSIONS OF LAW

. . . .

3. The 4th amendment provides the right to be free of unreasonable search and seizures. The 4th amendment is applicable to the states via the 14th amendment and further protection is provided by the parallel state constitution.

4. Under the 4th amendment, illegally obtained evidence and the fruits discovered are inadmissible.

5. Warrantless searches are presumed to be unreasonable unless it [sic] falls into a recognized exception to the warrant requirement.

6. Here, the parties stipulated that the search in this instant matter was a warrantless search.

. . . .

8. It is per se reasonable for the arresting officer to conduct a warrantless limited pat-down search of an arrestee's person and the area under the arrestee's immediate control for weapons, escape instrumentalities, or contraband.

9. Once probable cause is found for an arrest, a search incidental thereto is limited in scope to a situation where it is reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is arrested, or to protect the officer from attack, or to prevent the offender from escaping.

10. A search incident to lawful arrest is within the warrant exception only if the officer legitimately had probable cause to believe that what he felt was or contained a weapon or property that could have been used to facilitate the [defendant's] escape.

11. Here, Defendant was validly arrested pursuant to an outstanding bench warrant of arrest.

. . . .

15. Although Officer Seller[s] testified that when he saw the top of the object he believed that the container was a candy container and not a weapon, the Court finds that based on Officer Seller's [sic] eleven (11) years of service with the Honolulu Police Department he reasonably believed that the object may have contained a handcuff key to be used as a means of escape and therefore the search was a permissible search incident to arrest.

. . . .

18. Based on Officer Seller's [sic] testimony the Court finds that Officer Seller's [sic] action did not exceed the scope of a legitimate search incident to arrest since Officer Seller's [sic] removal of the M&M's container was motivated by his belief that the container may have contained something that could be used as a means of escape, namely a handcuff key in the container.

. . . .

20. The inevitable discovery exception to the warrant requirement is a sound principle which prevents the setting aside of convictions that would have been obtained in the absence of police misconduct if the prosecution presents clear and convincing evidence that any evidence obtained in violation of article I, section 7, would inevitably have been discovered by lawful means.

21. Police inventories are Fourth Amendment searches, however the court has also "concluded that [post-arrest] searches [are] reasonable because the government's legitimate interests outweighed the intrusion on the defendant's Fourth Amendment interests.

22. In a post-inventory search, the testimony of an officer regarding pre-incarceration search procedures of prisoners satisfied the clear and convincing standard of proof required by the inevitable discovery exception if the officer's testimony is credible.

23. Here, although the prosecutor presented argument raising the inevitable discovery doctrine, Officer Seller's [sic] generalized testimony did not present to the court clear and convincing testimony regarding pre-incarceration search procedures of prisoners and what legitimate governmental interest(s) outweigh the intrusion on the Defendant's Fourth Amendment interests.

24. Although Officer Sellers testified that persons placed under lawful arrest would have their pockets searched for contraband prior to being received at the police Central Receiving Division, his testimony was a general statement without [] any foundation establishing personal knowledge, outlining the standard procedures of the Central Receiving Division, or explaining the policy for said procedures. Although the court could reasonabl[y] assume that a search of a person for contraband is conducted by the police at the police station, the burden is on the State to present clear and convincing evidence establishing the procedures and policies of the Police Department.

25. Although the evidence did not meet the evidentiary standard of proof under the inevitable discovery doctrine, the court nevertheless concludes that the police officer's act of reaching into Defendant's pocket was within the scope of a search incident to lawful arrest since the officer reasonably believed that the object may have been used for a means of escape thus the inadvertent discovery of the zip-lock bag containing crack-cocaine did not violate the defendant's 4th amendment right against unreasonable search and seizure. Although Defendant did not raise any Constitutional challenges to the seizure of the zip-lock bag containing [a] whitish rock-like object, the prosecutor addressed this issue in her memorandum in opposition to the motion by raising the Plain View Doctrine. Under the Plain View Doctrine, objects sighted in plain view will be admissible [if] the original intrusion is justified. The Court finds that under the Plain View doctrine the zip-lock baggie containing the crack cocaine was properly seized under this doctrine [and] thus did not violate the Defendant's 4th Amendment Right.

(citations omitted; some brackets in original and some added).

The circuit court's findings of fact are unchallenged on appeal.

II. DISCUSSION

A. Standard of Review

A [circuit] court's ruling on a motion to suppress evidence is reviewed *de novo* to determine whether the ruling was "right" or "wrong." State v. Edwards, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (citing State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or

> seizures was violated under the fourth amendment to the
> United States Constitution and article I, section 7 of the
> Hawai'i Constitution. See <u>State v. Wilson</u>, 92 Hawai'i 45, 48,
> 987 P.2d 268, 271 (1999) (citations omitted).

<u>State v. Estabillio</u>, 121 Hawai'i 261, 269, 218 P.3d 749, 757
(2009) (quoting <u>State v. Kaleohano</u>, 99 Hawai'i 370, 375, 56 P.3d
138, 143 (2002)).

Further, on appeal, we consider evidence at both the
suppression hearing and the trial. <u>State v. Sanford</u>, 97 Hawai'i
247, 251 n.8, 35 P.3d 764, 768 n.8 (App. 2001); <u>State v. Nakachi</u>,
7 Haw.App. 28, 33 n.7, 742 P.2d 388, 392 n.7 (1987); <u>State v.
Uddipa</u>, 3 Haw.App. 415, 416-17, 651 P.2d 507, 509 (1982).

B.    <u>A Pat-Down Search Incident to Lawful Arrest Must Be
      Reasonably Limited In Scope</u>

A warrantless pat-down search of an individual incident
to a lawful arrest is permissible so long as the search is
reasonably limited in scope.  Under Hawai'i case law, the scope
of such a search must be reasonably necessary to discover: (a)
fruits or instrumentalities of the crime for which the defendant
is being arrested; (b) weapons; (c) instruments of escape; or (d)
contraband.[4]  See <u>State v. Reed</u>, 70 Haw. 107, 762 P.2d 803
(1988); <u>State v. Enos</u>, 68 Haw. 509, 720 P.2d 1012 (1986); <u>State
v. Kaluna</u>, 55 Haw. 361, 520 P.2d 51 (1974); <u>see also</u> <u>State v.
Ortiz</u>, 67 Haw. 181, 683 P.2d 822 (1984).  The decisions in
<u>Kaluna</u>, <u>Enos</u>, and <u>Reed</u> provide particular guidance for purposes
of analyzing the instant case.

In <u>Kaluna</u>, the Hawai'i Supreme Court held that seized
drugs were properly suppressed where, while in custody at the
police station, the arrestee removed her outer garments in
preparation for a search, the arrestee handed the attending
officer a piece of folded tissue removed from the arrestee's
brassiere, the attending officer opened the tissue "[j]ust to see

---

[4] Based on the case law, it appears that the contraband to justify a
warrantless pat-down search must be of a nature to reasonably endanger officer
safety, or the officer must have prior knowledge or suspicion of the existence
of the contraband.  <u>See</u> <u>Enos</u>, 68 Haw. at 511, 720 P.2d at 1014; <u>Reed</u>, 70 Haw.
at 114, 762 P.2d at 807.

what she had", and the tissue contained four capsules of a barbiturate.   55 Haw. at 362-63, 520 P.2d at 54.   The court explained:

> once probable cause is found for an arrest, a search incidental thereto
>
> is further limited in scope to a situation where it is *reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is arrested,* or to protect the officer from attack, or to prevent the offender from escaping.

Id. at 370-71, 520 P.2d at 59 (emphasis in original).   Under the facts in Kaluna, the Hawai'i Supreme Court held it was objectively unreasonable that the small tissue could have been used by the arrestee to escape or harm her captors, especially where it had been removed from her possession.   Thus, it was improper for the officer to open the tissue to satisfy her curiosity as to what it contained.

Importantly, the court further elaborated on standards to be applied in future cases:

> Today's construction of the Hawaii Constitution should not hamper the police in the legitimate exercise of their authority.  We merely hold that each case of search and seizure without a warrant must turn on its own facts, and that each proffered justification for a warrantless search must meet the test of necessity inherent in the concept of reasonableness. . . . [W]here the nature of the offense or the circumstances of arrest give rise to a legitimate and reasonable apprehension on the part of the arresting officer that the arrestee is armed and dangerous, a protective search for weapons is justified.
>
> In sum, we hold that a search incident to a valid custodial arrest does not give rise to a unique right to search; instead, the circumstances surrounding the arrest generate the authority to search without a warrant.  If these circumstances show a legitimate basis for a search – such as protection of the arresting officer or preservation of evidence of the crime for which the arrest is made – then a search is lawful only if no broader than necessary in light of the justification.  A search which exceeds this scope is a search without reason.  And a search without reason we regard as manifestly "unreasonable" under the Hawaii Constitution.

Id. at 371-72, 520 P.2d at 60 (emphasis added) (citations and footnotes omitted).

In Enos, the defendant appealed his conviction for promoting a dangerous drug, asserting the drugs in question were

illegally seized from his pants pocket during a search following his arrest for drunk driving. Upon the defendant's arrest, the arresting officer had conducted a pat-down search for weapons or contraband without any prior knowledge or suspicion that the defendant had any weapons or contraband. During the pat-down, the officer felt what appeared to be cellophane packets in the defendant's front pocket, suspected they contained contraband, and thus removed the packets and seized them as evidence.

Under these facts, while reiterating that, "[w]e have repeatedly upheld the right of an officer making an arrest to take reasonable and appropriate steps to protect himself from possible weapons to which the arrestee may have access[,]" 68 Haw. at 511, 720 P.2d at 1014, the court held that the search violated the defendant's constitutional rights, explaining:

> Here, the officer found no weapons. On this record, there was nothing to indicate that there were, concealed on the person of appellant, any fruits or instrumentalities of the crime of drunken driving. Given the finding by the court, which was in accord with the testimony, that the officer was without any prior knowledge or suspicion of the existence of contraband, the warrantless search and seizure, beyond the pat-down for weapons, violated appellant's rights under the Constitution of the State of Hawaii. The order denying a suppression of the four cellophane packets was error.

Id.

In Reed, the defendant was arrested for an outstanding warrant and a pat-down search incident to that arrest was conducted, yielding a switchblade knife and a plastic Tylenol bottle that contained pills alleged to be valium. The Hawai'i Supreme Court upheld the propriety of the pat-down search with regard to the seizure of the switchblade knife. However, the court vacated the defendant's conviction for possession of the illegal drugs that were in the Tylenol bottle.

The Court first addressed the switchblade knife, explaining that:

> In the present case . . . Officer DeAguiar did not engage in a general exploration of Reed's pockets but instead correctly made a limited frisk, felt the knife in Reed's right rear pants pocket, and extracted the weapon. . . . Notwithstanding that Officer DeAguiar had no specific suspicion that Reed was armed, we view the warrantless, limited pat-down search after a valid arrest for weapons, escape instrumentalities, or contraband as reasonable and necessary for the arresting police officer's safety. See State v. Clark, 65 Haw. 488, 654 P.2d 355 (1982); cf. State v. Ortiz, 67 Haw. 181, 683 P.2d 822 (1984). This type of search is not dependent on the nature of the crime or the circumstances of the arrest.

70 Haw. at 114, 762 P.2d at 807 (emphasis added). The court therefore stated:

> We thus hold that it is per se reasonable for the arresting police officers to conduct a warrantless, limited pat-down search of an arrestee's person and the area under the arrestee's immediate control for weapons, escape instrumentalities, or contraband.

Id. at 115, 762 P.2d at 808.

In addressing the Tylenol bottle and its contents, the court first stated:

> We once more stress that the pat-down frisk, as a form of the search incident to a valid arrest, must 1) be confined to a search of the arrestee's person or the area within his or her immediate reach for weapons, escape instrumentalities, or contraband; and 2) balance the weighty government interest in police safety against the arrestee's right to be free from unreasonable government intrusion. State v. Barrett, 67 Haw. 650, 701 P.2d 1277 (1985); see State v. Goodwin, 7 Haw.App. 261, 752 P.2d 598 (1988).

Id. The Hawai'i Supreme Court then pointed to and relied on the analysis of that part of the dissenting opinion issued by the Intermediate Court of Appeals that stated:

> My holding would validate the pat-down search, the permanent seizure of the switchblade knife, and the feeling of the plastic Tylenol bottle when it was in Appellant's "left front pocket". It would validate the temporary seizure of, removal from Appellant's pocket, and examination of the unopened plastic Tylenol bottle only if, *when Officer DeAguiar legitimately felt the bottle when it was in Appellant's pocket, he had probable cause to believe that what he felt was or contained a weapon or property that could have been used to facilitate Appellant's escape.* If Officer DeAguiar had probable cause to believe that what he felt was or contained contraband other than a weapon or property that could have been used to facilitate Appellant's escape, then he was not authorized to temporarily seize what he felt, to remove it from Appellant's pocket, or to examine it.

Id. at 116, 762 P.2d at 808-809 (emphasis in original).

12

The court determined that additional fact finding was necessary regarding the seizure of the Tylenol bottle and its contents. Therefore, the conviction for possession of the switchblade was affirmed, but the conviction for promotion of drugs was vacated and remanded for further proceedings.

C.   The Pat-Down Search In This Case Went Beyond Permissible Limits

In the instant case, under Kaluna, Enos and Reed, Officer Sellers properly conducted a pat-down search of Tia upon Tia's arrest. Even though Officer Sellers did not indicate any specific basis to believe Tia was carrying a weapon or other properly discoverable item, the initiation of a pat-down search incident to the arrest was valid.

Upon feeling the "hard cylindrical object" in Tia's right front pocket, the question then becomes whether Officer Sellers had a sufficient basis to take further steps to determine what it was. Officer Sellers did not know what it was but had a concern that it might be a weapon, stating that in the past he has pulled out "collapsible type of batons that are similar in shape." Kaluna, Enos, and Reed articulate a concern for officer safety upon the arrest of an individual, to be balanced against the arrestee's right to be free from unreasonable intrusion. Under the guidance of these cases, we believe it was proper for Officer Sellers to take reasonable steps to identify the object he felt in Tia's pocket. In Kaluna, the court stated:

> [W]here the nature of the offense or the circumstances of arrest give rise to a legitimate and reasonable apprehension on the part of the arresting officer that the arrestee is armed and dangerous, a protective search for weapons is justified.

55 Haw. at 372, 520 P.2d at 60 (emphasis added). In Enos, the court recognized that it had "repeatedly upheld the right of an officer making an arrest to take reasonable and appropriate steps to protect himself from possible weapons to which the arrestee may have access." 68 Haw. at 511, 720 P.2d at 1014 (emphasis added). See also State v. Ortiz, 67 Haw. at 187, 683 P.2d at 827

(Explaining that in the context of an investigatory stop, after police officer felt an object in a knapsack like the butt of a handgun, he had reasonable basis to open the bag and verify what it was. "Police officers need not risk a shot in the back by returning containers which they reasonably suspect contain a dangerous weapon but may lack probable cause to seize.").

In <u>Reed</u>, the court separately addressed the discovery of the switchblade and the Tylenol bottle in that case. That is, although a <u>probable cause</u> standard was applied to determine if the "temporary seizure of, removal from Appellant's pocket, and examination of the unopened plastic Tylenol bottle" was justified, 70 Haw. at 116, 762 P.2d at 808-809, the court separately concluded that removal of the switchblade from the defendant's rear pants pocket was proper, even though there was no discussion as to whether upon feeling the object the officer knew or had probable cause to know it was a weapon. In the instant case, Officer Sellers was able to identify the object and determine it was not a weapon prior to removing it from Tia's pocket. More importantly, however, given the standards discussed in <u>Kaluna</u>, <u>Enos</u>, <u>Reed</u>, and <u>Ortiz</u>, and the concern for officer safety articulated in those decisions -- especially with regard to potential weapons -- we conclude that <u>Reed</u> would not prevent Officer Sellers from identifying an object he had a legitimate concern could be a weapon.

Because we believe Officer Sellers had a legitimate and reasonable apprehension that the object he felt was a weapon, he properly sought to further identify it. However, the record is also clear that once the object reached the top of Tia's pocket, and before it was removed from the pocket, Officer Sellers determined that it was a M&M's container and that it was not a weapon. At this juncture, as noted by the circuit court, the concern about a weapon ceased to be a basis for any further intrusion and did not allow for removal of the container on that basis.

Officer Sellers did continue to remove the M&M's container, even after determining it was not a weapon, on the assertion that it could hold a means of escape, i.e., a handcuff key. At this juncture, similar to the Tylenol bottle in <u>Reed</u> and as required by <u>Reed</u>, the probable cause standard applied. Therefore, Officer Sellers must have had probable cause to believe the container held an instrument of escape. <u>Reed</u>, 70 Haw. at 116, 762 P.2d at 808-809. The probable cause standard is expressed by the Hawai'i Supreme Court as follows:

> Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty.

<u>State v. Maganis</u>, 109 Hawai'i 84, 86, 123 P.3d 679, 681 (2005); <u>see also</u>, <u>State v. Navas</u>, 81 Hawai'i 113, 116, 913 P.2d 39, 42 (1996).

Based on the record in this case, Officer Sellers did not have probable cause to believe the M&M's container held a handcuff key or other instrument of escape. As guided by <u>Kaluna</u>, we consider the nature of the offense warranting the arrest, as well as the circumstances surrounding the arrest. 55 Haw. at 372, 520 P.2d at 60. Here, Officer Sellers did not articulate, and the record does not reveal, probable cause that Tia was carrying a handcuff key in the M&M's container in his pocket. The circumstances of the case were that Officer Sellers came upon Tia while on routine patrol, believed there was a warrant for Tia's arrest, and arrested Tia after confirming the warrant. Nothing in the basis for the arrest -- the warrant itself -- would add a reasonable concern that Tia might carry a handcuff key on his person. Moreover, throughout the encounter with Officer Sellers, Tia cooperated, voluntarily exited the bar where he was found, and did not act in any manner that raised a concern. Therefore, under these facts, the justification that a

handcuff key might be in the M&M's container is not reasonable and falls short of the probable cause standard.

As clarified by the circuit court, the packet containing cocaine fell out of Tia's pocket as the M&M's container was being removed from his pocket. If not for the improper removal of the container, the packet of cocaine would have remained in Tia's pocket.

D.     Inevitable Discovery

The State argues that even if the pat-down search was illegal, the packet of cocaine should not be suppressed because it would have been inevitably discovered by lawful means. The inevitable discovery exception to the exclusion rule, and the requirements for its application, were adopted by the Hawai'i Supreme Court in State v. Lopez, 78 Haw. 433, 896 P.2d 889 (1995). In order for evidence to be admitted under this exception, the prosecution must "present clear and convincing evidence that any evidence obtained in violation of article I, section 7, would inevitably have been discovered by lawful means." Lopez, 78 Hawai'i at 451, 896 P.2d at 907.

"Clear and convincing evidence means such evidence as will produce 'in the mind of a reasonable person a firm belief as to the facts sought to be established.'" Lopez at 451 n.30, 896 P.2d at 907 n.30 (brackets omitted) (quoting Almeida v. Almeida, 4 Haw. App. 513, 518, 669 P.2d 174, 179 (1983)).

In Kaluna, the Hawai'i Supreme Court discussed the constitutionality of a limited pre-incarceration search. There, the court held:

> that the police have full authority to prohibit the entry of weapons, drugs or other potentially harmful items into jail. To this end, they may require internees to surrender any possible repositories for such items prior to incarceration. However, a concomitant of this wide authority to prohibit the entry of personal belongings which may harbor forbidden contents is a complete absence of authority to conduct a general exploratory search of the belongings themselves.

55 Haw. at 373, 520 P.2d at 61.

Here, the circuit court issued findings of fact and conclusions of law determining that the State had failed to present clear and convincing evidence that the packet of cocaine would have inevitably been discovered during a legal pre-incarceration search.[5] In Finding of Fact No. 23, the circuit court stated:

> 23. Officer Seller[s] finally testified that persons arrested are taken to the police station and their pockets are searched. Although the Court, based on the Officer's general statement, could have arguably assumed that every arrestee received into the Central Receiving Division would have his or her pockets searched, it was unable to make such an assumption since there was no evidence to establish that the Officer had personal knowledge of the police procedures and policies for said procedures.

In Conclusion of Law No. 24, the circuit court stated:

> 24. Although Officer Sellers testified that persons placed under lawful arrest would have their pockets searched for contraband prior to being received at the police Central Receiving Division, his testimony was a general statement without [] any foundation establishing personal knowledge, outlining the standard procedures of the Central Receiving Division, or explaining the policy for said procedures. Although the court could reasonabl[y] assume that a search of a person for contraband is conducted by the police at the police station, the burden is on the State to present clear and convincing evidence establishing the procedures and policies of the Police Department.

We agree with the circuit court that the State failed to carry its burden of presenting clear and convincing evidence on the issue of inevitable discovery. Officer Sellers, the

---

[5] In State v. Silva, this court affirmed a trial court's conclusion that the State had proved, by clear and convincing evidence, "that the contents of Defendant's pockets would have been revealed in an inventory search based on a finding that 'there's nothing in the record to suggest that the contraband was in a closed container.'" 91 Hawai'i 111, 120, 979 P.2d 1137, 1146 (App. 1999), aff'd State v. Silva, 91 Hawai'i 80, 979 P.2d 1106 (1999). The court concluded that under Kaluna, the contraband would clearly have been discovered in an inventory search where the defendant did "not contest that the objects were in his pocket" and where "there was no evidence that [the contraband] was in a closed container." Id. at 121, 979 P.2d at 1147. While the Silva opinion did not discuss any evidence presented in that case, if any, regarding the pre-incarceration search procedures, this court further noted in State v. Rodrigues, 122 Hawai'i 229, 238, 225 P.3d 671, 680 (2010) that "we do not read Silva to relieve the State of its burden to present clear and convincing evidence that discovery of contraband would have been inevitable upon an inventory search at the police cellblock."

arresting officer, was the only witness to testify about the pre-incarceration procedures of the Honolulu Police Department, his testimony was very limited at both the suppression hearing and at trial, and he provided no foundation for his knowledge about the procedures.  As the circuit court properly concluded, such generalized statements without sufficient foundation cannot meet the heightened standard of clear and convincing evidence required by Lopez.

III. CONCLUSION

Based on the above, we conclude that the circuit court erred in denying Tia's motion to suppress.  The Amended Judgment of Conviction and Sentence entered on January 29, 2009 is therefore vacated and the case is remanded for proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, September 10, 2010.


On the briefs:

Venetia K. Carpenter-Asui
for Defendant-Appellant

Stephen K. Tsushima
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Associate Judge

Associate Judge

18